* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence, rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment on July 31, 2004.
2. On July 31, 2004, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On July 31, 2004, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On July 31, 2004, defendant-employer employed three (3) or more employees.
5. On July 31, 2004, Crawford Co was the workers' compensation insurance carrier in North Carolina for the defendant-employer.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years old and had a tenth grade education. She had worked as a waitress since the age of 15 and had been employed by defendant-employer for approximately four years prior to July 31, 2004.
2. On April 9, 2003, plaintiff was involved in an automobile accident. As a result, she was in a coma for approximately a month and sustained multiple injuries including, but not limited to, a crushed right foot, multiple skull fractures, and an injury to her left eye.
3. On April 9, 2003, plaintiff had two surgeries performed to her right foot following her automobile accident. First, Dr. Patrick K. Denton performed surgery on April 10, 2003, consisting of right open medial malleolus fracture irrigation and debridement with cannulated screw fixation. Second, Dr. G. Samuel Agnew, an orthopedic surgeon, performed surgery on April 23, 2003, consisting of open reduction and internal fixation with allograft bone graft and calcium phosphate. This surgery required insertion of numerous pins to support and maintain the height of the foot.
4. Plaintiff saw Dr. Agnew on four occasions following her two surgeries until her release on December 2, 2003. She had no complaints of pain and there was no discernable swelling during these four visits. In addition, x-rays taken on two separate occasions indicated a normal recovery and a healed calcaneal fracture with maintenance of the height and alignment of her subtalar joint.
5. At the time Dr. Agnew released plaintiff on December 2, 2003, she was walking without complaints of pain, had nearly symmetrical ankle range of motion and hind foot alignment, and walked with a nonantalgic gait. Dr. Agnew released plaintiff to return to work as a waitress with respect to her right foot.
6. Plaintiff was unable to return to work with defendant-employer until approximately July 1, 2004, because of other injuries sustained in her April 9, 2003, automobile accident, primarily an injury to her eye.
7. From the date that Dr. Agnew released plaintiff on December 2, 2003, until July 31, 2004, plaintiff was not treated by Dr. Agnew or any other physician with respect to her right foot. Plaintiff did not complain to Dr. Agnew or any other physician with respect to her right foot, and had no medications prescribed or filled by Dr. Agnew or any other physician for problems with her right foot. During this period of time, plaintiff walked without a limp and did not have pain.
8. From July 1, 2004, to July 31, 2004, plaintiff worked for defendant-employer, sometimes working two shifts and on two occasions working when a co-employee failed to appear.
9. On July 31, 2004, while working for defendant-employer, plaintiff had cleaned her table off and was taking the dirty dishes on a tray to the dishwasher. As she placed the last glass in the glass rack, she called for the dishwasher to empty it. His hand slipped causing the rack to fall out of his hand and onto plaintiff's tray. This caused all of the dishes on plaintiff's tray to fall onto her right foot and the floor. This included five or six glass plates, glasses filled with silverware and drinks, cups, dessert dishes, etc. Plaintiff estimated that these dishes cumulatively weighed approximately 15 to 20 pounds.
10. Plaintiff was in immediate pain and had to grab hold of a bar so that she could stand up and not put pressure on her foot. She remained in this position for a few minutes and then sat down for approximately 30 minutes to an hour and a half. Plaintiff attempted to walk on her foot but was unable and was sent home.
11. Plaintiff again attempted to return to work the following day but she was unable and was again sent home.
12. On the Monday following the Saturday accident, plaintiff called Dr. Agnew. He was on vacation and his assistant prescribed Ibuprofen 800 mg. for pain and swelling and Acetaminophen/co. # 3 for pain. Plaintiff took these medications but had an allergic reaction requiring her to be hospitalized in Chesterfield General Hospital on August 12, 2004, where she remained until August 17, 2004.
13. After plaintiff was discharged from Chesterfield General Hospital on August 17, 2004, she immediately made an appointment with Dr. Agnew and saw him on August 20, 2004, with complaints of increasing pain in her ankle that was brought on by blunt trauma.
14. Dr. Agnew had x-rays taken of plaintiff's right foot that revealed a segmental collapse of her thalamic zone in her posterior facet. Dr. Agnew indicated that this was both a collapse of the calcaneous as well as the pins that he had inserted during the second surgery on April 23, 2003.
15. Dr. Agnew was concerned that plaintiff had suffered a segmental collapse that is characterized by a loss of height. He opined that the x-rays taken on June 24, 2003, and August 5, 2003, prior to plaintiff's work-related injury did not reveal any loss of height and were normal in all respects. However, the x-rays taken following her July 31, 2004, work-related accident revealed an acute segmental collapse as opposed to a gradual segmental collapse.
16. Dr. Agnew immediately recommended surgery that he performed on September 10, 2004, consisting of a repair of nonunion of calcaneous, a subtalar bone block arthrodesis, and a removal of implants, deep.
17. Although Dr. Agnew treated plaintiff post-operatively and originally released her from his care on February 22, 2005, to return on an as-needed basis, as of the date of the hearing before the Deputy Commissioner, he had not released her to return to work. Plaintiff has not returned to work or regained any earning capacity subsequent to the date of accident on July 31, 2004, with the exception of her attempts to return to work on the day following the accident.
18. Dr. Agnew opined that the July 31, 2004, accident caused or significantly contributed to the segmental collapse of her calcaneous and the pins holding her foot in place. This opinion is based on the fact that plaintiff was not having any problems beforehand, that her pre-accident x-rays were all normal while post-accident x-rays were abnormal, and that the segmental collapse represented an acute injury to her right foot as opposed to a gradual injury.
19. Dr. Dupuy, an orthopedic surgeon, did not examine plaintiff but was requested by defendants to render an opinion as to the issue of medical causation based on plaintiff's medical records. Accordingly, less weight is given to the opinion of Dr. Dupuy, who thought the segmental collapse was gradual, than to that of Dr. Agnew, who is also an orthopedic surgeon and plaintiff's treating physician.
20. As of the hearing before the Deputy Commissioner, plaintiff had not yet been assigned a permanent partial disability rating.
21. Plaintiff's average weekly wage is $100.19 resulting in a compensation rate of $66.79 as stipulated to by the parties subsequent to the hearing before the Deputy Commissioner on December 1, 2005.
22. Plaintiff has not reached maximum medical improvement.
23. The Full Commission finds plaintiff's testimony to be credible.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 31, 2004, plaintiff sustained an injury by accident to her right foot arising out of and in the course of her employment with defendant-employer. This injury involves an aggravation of plaintiff's pre-existing right foot condition. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury to her right foot, plaintiff has been disabled from work since July 31, 2004, and is entitled to receive compensation for temporary total disability at the rate of $66.79 per week for the time period beginning July 31, 2004, and continuing until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of the July 31, 2004, compensable injury by accident, plaintiff is entitled to have defendants pay for medical care reasonably necessary to effect a cure or give relief for her right foot injury, including all treatment and treatment recommendations made by Dr. G. Samuel Agnew. N.C. Gen. Stat. §§97-2(19), 97-25.
4. Since plaintiff has not yet reached maximum medical improvement, the issue of plaintiff's entitlement to permanent partial disability is hereby reserved. N.C. Gen. Stat. § 97-31.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for her temporary total disability at the rate of $66.79 per week beginning July 31, 2004, and continuing until plaintiff returns to work or further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. As a result of the July 31, 2004, compensable injury by accident, plaintiff is entitled to have defendants pay for medical care reasonably necessary to effect a cure or give relief for her right foot injury, including all treatment and treatment recommendations made by Dr. G. Samuel Agnew.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due under Paragraph 1 of this Award is hereby approved and shall be deducted by defendants from compensation that has accrued and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel is to receive every fourth check.
4. Defendants shall bear the costs of this action.
This the 27th day of July 2006.
 S/________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER